UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
AT PIKEVILLE

| EULA CONLEY CRUM, | CIVIL ACTION NO. 7:12-80-KKC |
|---|---|
| Plaintiff, | |
| V. | OPINION & ORDER |
| EQUITRANS, LP, | |
| Defendant. | |

\*\*\* \*\*\* \*\*\*

This matter is before the Court on a motion for summary judgment brought by Defendant Equitrans, LP. (DE 29). Equitrans contends that the evidence in the record cannot sustain a finding of causation, and Equitrans is therefore entitled to judgment as a matter of law. For the following reasons, the Court will grant the defendant's motion and this matter will be dismissed.

I.

Eula Conley Crum brings this common-law action for negligence against Equitrans, in which she claims that Equitrans was negligent in the construction of its pipe line, and that its negligence caused damage to her real property. Her claim is fairly straightforward: she asserts that Equitrans was "negligent in re-establishing the drainage and proper flow of water from the adjacent properties," and that such negligence "caus[ed] a landslide to damage the Plaintiff's" property. (Complaint, DE 1-2, ¶ 5). In addition to compensatory damages, Crum seeks punitive damages due to Equitrans' reckless disregard for her property.

As to her damages, Crum claims that her house and its foundation have been damaged due to the defendant's negligence. In an interrogatory, Crum was asked to "[q]uantify each and every item of damage, whether special, general, compensatory, punitive, or otherwise, claimed by Plaintiff in this action, describe the method of calculation of said damages, and itemize each category of damages (including punitive damages) claimed or sought." (Interrogatory No. 5, DE 21, at 2). Her response stated the following:

> Because of the incorrect installation of gas lines on the side of the mountain and negligence in correcting the problem after numerous calls and complaints, the hill behind my house slipped and it cause damaged [sic] to Plaintiff's house damaging both the house and the foundation.

(Answer to Interrogatory No. 5, DE 21, at 2). Crum further stated that this damage has made it "impossible to sell [the house] for what the fair market value would have been." *Id*. Crum then provided a more in-depth explanation of the damage to her house in her deposition:

> The brick was cracked, the concrete porch was pulled away from its foundation or its, you know, from my front door. The foundation was cracked. I mean, you know, it was an impact and a half that come off that hill. You know, the backyard is gone, so.

(Crum Depo., DE 31, at 29).

But Crum has not provided any evidence demonstrating a causal link between the alleged damage to her house and the activities of Equitrans. At her deposition, Crum was asked whether she had anyone with expertise determine whether the damage to her house was caused by the landslide:

> **Q:** As far as the damage that you say that occurred to the house, have you had an engineer or anyone like that come out and take a look at it to try to determine if it's related to the slide?

> **A:** I just had my -- well, I know that before, I mean, everything I put on that was new. It never had cracked before. It's just, all of a sudden, it cracked after this slide. I mean it was an impact and a half coming off that hillside.
>
> **Q:** All right. But you've not had an engineer or anyone like that come out?
>
> **A:** No, I've just had an appraisal, you know.

(Crum Depo., DE 31, at 29–30).

Crum has also relied on the testimony of three witnesses to support her allegation that Equitrans caused damage to her house through its negligence in constructing the pipeline. Ruby Conley, a neighbor of Crum's, testified as to her personal opinion about the value of Crum's residence. (Conley Depo., DE 40-2, at 6) ("And I was in [the house] after all this, and I wouldn't give her 2500 for it myself."). But when asked whether the landslide "actually reached the house where Eula lives," Ruby said, "Now, that, I couldn't tell you. I don't really know . . . ." (Conley Depo., DE 40-2, at 8). As Conley does not possess any sort of expertise about pipeline construction, landslides, home appraisals, or engineering, her testimony during the deposition lacked any explanation as to how Equitrans was negligent and how that negligence might have caused the damage of which Crum complains.

The second witness Crum relies on is Otis Hansel Cooley, Sr., a realtor and appraiser. Cooley appraised Crum's property at her request, and Crum informed him she had some damage to her house due to slippage. In making his appraisal, however, Cooley did not attempt to assess what caused the damage:

> **Q:** Okay. And did you make any determination -- were you asked to or did you attempt to make any determination as to the cause of the damage she told you about?
>
> **A:** I'm not quite sure how to answer that question. She pretty well filled me in on all the details, but as far as asking someone else, no, I didn't ask anyone else.

> **Q:** Okay. And you didn't do any engineering type work to try to determine what had caused the damage?
>
> **A:** No, sir. No, I'm not an engineer.

(Cooley Depo., DE 32, at 5). Moreover, Cooley acknowledged that he made no attempt to determine what might have caused damage to her home:

> **Q:** Okay. Now, you've said there 30 percent deduction for external obsolescence, and you say due to the pipeline damage, that is based upon what she told you; you didn't make any assessment as to whether or not a slide had caused the cracks in the foundation or anything of that effect, correct?
>
> **A:** I just went with what she told me. Anything she told me -- and, of course, I could see the evidence of where it had happened. I had some pictures there of the land and showed them to her, also.
>
> **Q:** Sure.
>
> **A:** I mean, I didn't have to be a rocket scientist to figure out what had caused it.
>
> **Q:** No, without a doubt there was damage to the foundation.
>
> **A:** Yes. Yes, sir.
>
> **Q:** But you didn't make a determination as to what had caused that damage, correct?
>
> **A:** Well, you know, I couldn't make any other kind of determination with the evidence of the mountain and the condition it was in and the condition of the house. I hadn't heard of a tornado or anything coming through.
>
> **Q:** But there are many different particular causes. Settling can cause foundation damage, correct?
>
> **A:** It can, yes, sir.
>
> **Q:** And as far as -- water can cause that, but there could be different sources of where the water could have come from; is that correct?

> **A:** Water can go about anywhere it wants to.

(Cooley Depo., DE 32, at 19–20). To the extent that Cooley's assessment of Crum's damage is accurate, his testimony during the deposition makes clear that he has no personal opinion as to the *cause* of that damage, nor does he claim to possess any expertise from which he might derive such an opinion.

One final witness provided testimony with regard to Crum's damage and its relation to Equitrans' activities. Clarence Hamilton, a former inspector for the Kentucky Division of Oil and Gas, investigated the construction of the pipeline and opined as to some of the debris on Crum's residence. Hamilton inspected the area where he discovered "[a] pretty good slip that came down almost directly behind Ms. Conley's residence." (Hamilton Depo., DE 40-1, at 11). This slip caused "several hundred yards" of debris to accumulate "just behind Ms. Conley's house." (Hamilton Depo., DE 40-1, at 12). But when asked whether he could determine with any kind of certainty what caused the slippage, Hamilton stated that he could not:

> **Q:** Were you able to eliminate other causes of this slippage other than the construction of the pipeline?
>
> **A:** I mean, I know that it probably wouldn't have slipped had they not gone through there with that, but Mother Nature created the problem they had gone through, you know, with heavy rains, and we did have heavy rains that year.
>
> **Q:** Would there have been a slippage without there having been a disturbance of the earth caused by the construction of the pipeline?
>
> . . .
>
> **A:** I can't guarantee that one way or the other. You know, it just -- Mother Nature does lots of things.

(Hamilton Depo., DE 40-1, at 12–13). Hamilton also stated that during his inspection he made no assessment or determination as to whether Crum's house was damaged. (DE 40-1, at 22).

These four witnesses—Crum herself along with Ruby Conley, Otis Cooley, and Clarence Hamilton—comprise the only evidence in the record that Crum relies on to prove that the activities of Equitrans caused damage to her house. Equitrans contends that none of them are qualified to make such an assessment, and even if they were, their opinions do not individually or collectively amount to anything more than speculation regarding the element of causation. For this reason, Equitrans moves for summary judgment as Crum cannot prove a necessary element of her cause of action.

## II.

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate where the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotations omitted). The moving party may meet this burden by demonstrating the absence of evidence supporting one or more essential elements of the non-movants claim. *Id.* at 322–25. Once the movant meets this burden, the opposing party must "go beyond the pleadings and . . . designate specific facts showing that there is a genuine issue for trial." *See id.* at 324 (internal quotations omitted). Ultimately, the court must determine "whether the evidence presents a sufficient

disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).[1]

Equitrans contends that there is no genuine dispute as to whether its alleged negligence caused damage to Crum's house, as no evidence on the record supports a finding of causation. To meet its initial burden, Equitrans offers an uncontradicted affidavit of its own expert witness, Dale Nicholson. Nicholson is a "professional engineer" who "conducted an on-site inspection of the Plaintiff's property and the surrounding area." (Nicholson Affidavit, DE 29-2, at 1). After making his inspection, Nicholson concluded that "[n]one of Equitrans' activities, including the landslide attributed to its pipeline, can be linked in any rational or reasonable manner to the damages observed in the western foundation walls of the Crum residence." (Nicholson Affidavit, DE 29-2, at 2). He further concluded that the damage experienced by Crum was "the result of a combination of naturally-occurring phenomena," including:

> i   Horizontal forces on the foundation wall and footing from hillside creep.
>
> ii.  Exacerbation of the creep by water from the ditch line along the western foundation wall saturating the foundation soils and making those soils susceptible to failure due to shear forces imposed by the hillside creep.
>
> iii. Exacerbation of the damage to the western wall due to frost/heave in the winter and foundation shrinkage/swelling during the summers.

---

[1] In responding to the defendant's motion, the plaintiff mistakenly relies on Kentucky's standard of summary judgment, which precludes summary judgment unless "the movant shows that the adverse party could not prevail under any circumstances." *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476, 480 (Ky. 1991). Because this case is in federal court on diversity jurisdiction, and not in Kentucky state court, the federal standard applies. *See McGonigle v. Whitehawk*, 481 F. Supp. 2d 835, 838 (W.D. Ky. 2007) (internal citations omitted) ("[A] federal court in a diversity action applies the standard of Fed. R. Civ. P. 56, not 'Kentucky's summary judgment standard as expressed in *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*").

(Nicholson Affidavit, DE 29-2, at 2). Thus, according to the expert testimony provided by the defendant, Equitrans' activities—whether negligent or not—could not have caused the damage to Crum's property.

The question then is whether credible evidence exists on the record that would contradict the findings of Nicholson or in some other way create a genuine dispute as to whether Equitrans' activities caused damage to Crum's household. As a threshold matter, the Court notes that the parties disagree as to whether the plaintiff is required to prove causation through the use of an expert witness. Generally, expert witnesses are required only when the subject-matter does not fall "within the general or common knowledge of laypersons." *Smithfield Packing Co., Inc. v. Armstrong Indus. Refrigeration and Maintenance Serv.*, 2013 WL 757210, *4 (E.D. Ky. Feb. 27, 2013). But when the issue concerns a fact "so apparent that even a layperson could recognize it," expert testimony is unnecessary. *Boland-Maloney Lumber Co., Inc. v. Burnett*, 302 S.W.3d 680, 686 (Ky. Ct. App. 2009).[2] Here, the issue is whether a layperson, untrained in engineering or a comparable field of study, is equipped to opine as to how Equitrans' pipeline construction caused a landslide, and how that landslide damaged the foundation and brick of Crum's house.

The Court finds that this subject-matter is outside the scope of a layperson, and that the plaintiff needs expert testimony—which she does not have—to prove such a complex question of causation. None of the witnesses opined directly as to how exactly the

---

[2] *Boland-Maloney* discusses whether an expert is required for proving the standard of care in a negligence case, only briefly commenting on causation. In *Smithfield*, the court stated that the "logic [in *Boland-Maloney*] aptly applies to the causation issue as well." *Smithfield*, 2013 WL 757210 at *4. The parties in the instant case appear to agree as to when expert testimony is required generally, but disagree as to whether the standard applies to this particular case. Compare Defendant's Reply Memorandum in Support of Its Motion for Summary Judgment, DE 36, at 2, with Plaintiff's Memorandum of Law in Opposition of Defendant's Motion for Summary Judgment, DE 34, at 6.

defendant's construction of its pipeline caused damage to the brick and foundation of Crum's house, likely because they lack the expertise to do so. The effects of a nearby landslide on the foundation of a house are complicated and not within the "general or common knowledge of laypersons," and as such the plaintiff cannot prove the element of causation without expert evidence.

But even if lay testimony was sufficient, none of the evidence Crum relies on establishes causation. Of the four witnesses, not a single one offered anything except speculation regarding the cause of Crum's property damage. Crum herself has no personal knowledge as to whether Equitrans was negligent in its pipeline construction, nor did she offer any opinion as to how Equitrans' negligence might have damaged her house. Rather, Crum simply insisted that the damage to her house must have been the fault of Equitrans because it did not exist prior to the construction of the pipeline. (Crum Depo., DE 31, at 29–30). This is insufficient to demonstrate "a genuine issue for trial." *Celotex*, 477 U.S. at 324.

The testimony of Conley and Cooley is even more deficient. Cooley acknowledged that he has no opinion as to the cause of any damage to her house, and his only job was to make an appraisal. (Cooley Depo., DE 32, at 5, 19–20). He speculated as to what *might* have caused her damage, but acknowledged that he made no investigation into the pipeline and there are multiple factors that could have caused the damage. (Cooley Depo., DE 32, at 19–20). In Conley's deposition, she stated that she was not sure if the landslide reached Crum's property, and did little more than offer her personal opinion as to how much Crum's house might be worth. Nothing in either Conley or Cooley's testimony addressed the cause of Crum's damage other than speculating or simply repeating what Crum had told them before, and such evidence cannot support a finding of causation. *See Gibson v. Fuel Transport, Inc.*, 410 S.W.3d 56, 60–61 (Ky. 2013) ("While [a] causal connection may be

9

established by circumstantial evidence, such evidence 'must indicate the probable, as distinguished from a possible cause.'").

Finally, the testimony of Clarence Hamilton is similarly void of a credible opinion as to the cause of Crum's damage. Hamilton inspected the area around the pipeline and offered an opinion as to how Equitrans might have improperly reestablished the drainage around the pipeline. Hamilton also observed what he believed was evidence of where "water had washed through and across [Crum's] property, not on a normal -- what I would consider a normal drain for the terrain." (Hamilton Depo., DE 40-1, at 17). But again, missing from this is any connection between the damage to Crum's property and the alleged negligence by Equitrans. Hamilton stated in his deposition that he made *no assessment* of the damage to Crum's property, and therefore has no opinion as to how it might have been caused. And even if Hamilton believes that Equitrans caused water to wash through Crum's property, as he stated, his testimony also indicates that he does not know whether the landslide would have occurred but-for the negligence of Equitrans:

> **Q:** Were you able to eliminate other causes of this slippage other than the construction of the pipeline?
>
> **A:** I mean, I know that it probably wouldn't have slipped had they not gone through there with that, **but Mother Nature created the problem** after they had gone through, you know, with heavy rains, and we did have heavy rains that year.
>
> **Q:** Would there have been a slippage without there having been a disturbance of the earth caused by the construction of the pipeline?
>
> . . .
>
> **A: I can't guarantee that one way or the other. You know, it just -- Mother Nature does lots of things.**

(Hamilton Depo., DE 40-1, at 13) (emphasis added). Hamilton's testimony is unequivocal in stating that he that he cannot determine whether the landslide was actually caused by Equitrans, much less whether the landslide caused damage to Crum's property, which he never investigated. His testimony fails to contradict the findings of the defendant's expert witness, and moreover, fails to offer any credible opinion as to the cause of Crum's damage.

Accordingly, **IT IS ORDERED** that the defendant's motion for summary judgment (DE 29) is **GRANTED** and the claims against Equitrans are **DISMISSED**. Judgment shall be entered contemporaneously with this order.

Dated this 12th day of May, 2014.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY